**Harold RICHARDSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 39703.**

Missouri Court of Appeals,
Western District.

May 24, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1988.

Application to Transfer Denied
July 26, 1988.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LOWENSTEIN, P.J., and NUGENT and MANFORD, JJ.

NUGENT, Judge.

Movant Harold Richardson appeals after an evidentiary hearing from the denial of his Rule 27.26 motion to set aside his conviction and sentence. We affirm the judgment.

In November, 1985, a jury found Harold Richardson guilty of second degree burglary and stealing, and we affirmed his conviction on direct appeal. *State v. Richardson*, 719 S.W.2d 884 (Mo.App.1986).

On January 14, 1987, Mr. Richardson moved under Rule 27.26 to set aside his conviction and sentence. In his second amended motion he alleged that his trial counsel had been ineffective in at least three ways: First, he was ineffective in failing to move to quash the jury panel because members of the jury had been selected in such a way that their names could be seen before final selections were made. Next, he says that counsel was ineffective in failing to establish that the only black venire member had been peremptorily stricken by the state, failing to make a proper record and failing to move to quash the jury panel or to assert that error in his motion for new trial. Mr. Richardson also alleged that his counsel was ineffective because of certain actions at trial and that the trial court had erred when it refused to listen to his reasons for wanting substitute counsel in place of his appointed counsel, Dennis Rolf.

Mr. Richardson contends that the trial court erred in refusing to listen to his "grounds" for wanting a new attorney, arguing that this "refusal" meant that he did not have effective assistance of counsel. His contention is not supported by the record. When this matter first arose during pretrial conferences on October 15, 1985, the trial judge did, in fact, tell the defendant that he "d[id]n't care" what his grounds were. However, when he made that statement, Judge Bellamy indicated to the defendant that, regardless of his grounds, he would see that another attorney was appointed to represent him, and he directed Mr. Rolf to contact the public defender's office and have them assign someone else to the case.

Mr. Rolf did as he was instructed and wrote Mr. Robert D. Godfrey, the deputy director of the office of the State Public Defender, and requested that another attorney be appointed to handle the case. In that letter Mr. Rolf indicated that Mr. Richardson's disagreement with him was based upon Mr. Rolf's refusal to file some motions until he had a chance to read them and possibly redraft them. Mr. Godfrey informed Judge Bellamy that, after reviewing Mr. Rolf's letter and after speaking with Mr. Rolf, he could not determine any conflict of interest sufficient to justify Mr. Rolf's removal from the case. On October 29, 1985, Judge Bellamy informed the defendant that Mr. Rolf would continue to represent him. At that time the defendant did not voice any further objection to Judge Bellamy's ruling; he did not reassert his demand for another attorney, and he did not state any ground to justify or require Mr. Rolf's removal from the case.

Before an attorney may be allowed to withdraw from the case, an irreconcilable conflict, that is, a total breakdown of communication between the attorney and client must exist. *State v. Richardson*, 718 S.W.2d 170, 173 (Mo.App.1986). *See also State v. Turner*, 623 S.W.2d 4, 11 (Mo.1981) (en banc). The record reveals no irreconcilable conflict between Mr. Rolf and Mr. Richardson.

To prevail on a claim of ineffective assistance of counsel, the movant must show that his attorney failed to exercise the customary skill and diligence of a reasonably competent lawyer under similar circumstances and that this failure prejudiced movant. *Id.* at 12; *Seales v. State*, 580 S.W.2d 733, 736 (Mo.1979) (en banc).

Defendant argues that the jury selection procedure utilized at his trial was tainted because Mr. John Morgan, the Circuit Clerk of Lafayette County, "would look at the names" of the venire members before final selections were made. A claim concerning supposed irregularities in the procedures used to select a defendant's jury must be raised in a timely manner at trial and cannot be raised for the first time in an action under Rule 27.26. *Hemphill v. State*, 566 S.W.2d 200, 207 (Mo.1978) (en

banc); *Benson v. State*, 611 S.W.2d 538, 541–42 (Mo.App.1980).

However, defendant argues that his trial counsel was ineffective in failing to move to quash the jury panel because of this alleged irregularity. At defendant's Rule 27.26 hearing Mr. Morgan, the Circuit Clerk, testified that he could not see the names of the juror cards until he had pulled the cards. After the cards were pulled, he looked at the cards to see who might be away on vacation and, therefore, unavailable for jury duty. The hearing court found no violation of § 495.080 R.S.Mo., 1978, and neither do we. Mr. Rolf was not ineffective for failing to make a baseless motion.

Mr. Richardson also contends that Mr. Rolf was ineffective because he failed to highlight the "inconsistencies" in the testimony given by two arresting police officers because the discrepancies would have called "their accuracy into question" and because he did not introduce into evidence the shoes seized from the defendant at the crime scene because the jury would have observed a lack of "obvious glass particles" in the soles of the shoes.

The general rule is that the extent of cross-examination and subjects covered must be left to the judgment of counsel. *Williams v. State*, 712 S.W.2d 404, 409 (Mo.App.1986). The decision to impeach an opposing witness constitutes a choice of trial technique which lies within the broad latitude possessed by counsel in conducting a defense. *Green v. State*, 575 S.W.2d 868, 869 (Mo.App.1978). We decline to second-guess Mr. Rolf's choices.

Defendant argues that his shoes did not have glass fragments in them and that they would have been exculpatory. Officer Inman testified that the shoes had glass in the soles when he placed them in the evidence locker. Whether or not the shoes had glass in them at the time of the trial would have made no difference considering the overwhelming nature of the evidence against the defendant. Counsel's decision not to introduce the shoes as evidence falls within the latitude allowed counsel in conducting a defense. *Id.*

Defendant raises a third point—that Mr. Rolf did not object to leading questions by the prosecutor, but he fails to brief or argue this issue. This failure obviates our review of this claim. *Parker v. State*, 614 S.W.2d 776, 778 (Mo.App.1981).

Finally, defendant charges that Mr. Rolf was ineffective because he failed to preserve a Sixth Amendment objection to the peremptory striking of the only black venire member. The record reveals that Mr. Rolf did object to the jury panel when, after the exercise of strikes for cause and peremptory strikes, he said:

> Judge, just for the record, I think my client would like for [sic] me to object to the jury selection in that it does not include a fair representation of the county, and that it only includes one black, who has already been stricken.

Mr. Rolf did not object further, did not ask that the prosecutor put his reasons, if any, on the record, and did not raise the issue in his motion for new trial.

Mr. Richardson was tried November 4, 1985. Under the law at that time, the striking of black venire members was not a *per se* violation of the Equal Protection Clause. *Swain v. Alabama*, 380 U.S. 202, 221–22, 85 S.Ct. 824, 836–37, 13 L.Ed.2d 759 (1965). *Swain* was overruled on April 30, 1986, six months after Mr. Richardson's trial. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Griffith v. Kentucky*, 479 U.S. 314, ——, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661–62 (1987), the Supreme Court held that the *Batson* ruling was to be applied retroactively to all state or federal cases pending on direct review that were not then final. Under *Batson* and *Griffith*, the peremptory striking of one black member of the venire would have been reviewable on direct appeal if preserved in defendant's motion for new trial. The issue was not preserved and was not raised. The question then is not whether counsel could or might have predicted an imminent change that would benefit his client but whether he may be held to have been ineffective in failing to act as though a change in the *Swain* rule was imminent and in failing to anticipate that the change would be applied retroactively.

The hearing court found that counsel should be held accountable for knowledge as to the state of the law on the date of the trial and not be required to anticipate changes in the law. Though we recognize that defense attorneys all across the country were anticipating just such a change and were regularly raising the issue, (*See State v. Neil,* 457 So.2d 481 (Fla. 1984); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); *United States v. Nelson,* 529 F.2d 40 (8th Cir.1976); *United States v. Carter,* 528 F.2d 844 (8th Cir.1975), we find that a line must be drawn somewhere. Attorneys must be held accountable for the law at the time they try a case; if they are knowledgeable to that extent, they cannot be declared ineffective because they do not make objections and preserve points which may become error at some future date. *Benson v. State,* 611 S.W.2d 538, 544 (Mo. App.1980); *Larrabee v. State,* 616 S.W.2d 542, 543 (Mo.App.1981).

Based on the foregoing, we affirm.

All concur.